IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROSE KOCHKA,

        Plaintiff,

    v.

ALLEGHENY HEALTH NETWORK,

        Defendant.

2:21-CV-01349-CCW

## OPINION

Before the Court is Defendant Allegheny Health Network's[1] ("AHN") Motion for Summary Judgment. ECF No. 26. For the reasons that follow, the Motion will be DENIED.

### I.    Background

Plaintiff Rose Kochka filed her Complaint against AHN on October 8, 2021, alleging disparate treatment and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq.*, and the Pittsburgh City Code, Article 5 §§ 651.01, *et seq.* ECF No. 1.[2] After the parties engaged in discovery, AHN filed the instant Motion, arguing that it is entitled to judgment as a matter of law based on the undisputed facts. ECF Nos. 26, 27. Ms. Kochka contests the Motion, and the issues are now fully briefed. ECF Nos. 32, 41, 45, 48. The following facts are undisputed unless otherwise noted.

---

[1] AHN asserts that West Penn Allegheny Health System, Inc. is the proper defendant in this case, but it has not moved to amend the caption or otherwise correct this asserted deficiency.  *See* ECF No. 41 at 1 n.1. Accordingly, the Court will refer to AHN instead of West Penn Allegheny Health System, Inc. when identifying Ms. Kochka's employer.

[2] This Court has jurisdiction over Ms. Kochka's ADEA claims under 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims, 28 U.S.C. § 1367.

Ms. Kochka began working for AHN in its radiology department in January of 1989. ECF No. 40 ¶ 1; ECF No. 33 ¶ 5. In June 2017, as part of a broader restructuring of the radiology department, AHN promoted Ms. Kochka—54 years old at the time—to a newly created position: Manager of Radiology Operations. ECF No. 33 ¶¶ 2–4. In her new role, Ms. Kochka supervised approximately 150 radiology employees. ECF No. 40 ¶ 6. AHN does not dispute that for the first twenty-nine years of Ms. Kochka's employment, it gave her positive performance evaluations and never disciplined her. *Id.* ¶ 4.

In August 2018, also as part of its restructuring of the radiology department, AHN hired Beverly Feragotti to another newly created position: Regional Services Administrator for Imaging Services. ECF No. 33 ¶ 8. In her new role, Ms. Feragotti supervised Ms. Kochka. *Id.* ¶ 10. The parties both acknowledge that AHN hired Ms. Feragotti—who was 47 years old at the time—to "improve the culture" of the Radiology Department, and that, at the time of Ms. Feragotti's hiring, the Radiology Department was a "chaotic" environment. *Id.* ¶¶ 11–12.

The parties paint divergent pictures of what happened next. According to Ms. Kochka, Ms. Feragotti soon embarked on a campaign to fire Ms. Kochka and replace her with two of Ms. Kochka's younger subordinates, Morgan Henderson and Andrea Campbell, who were in their late-twenties and early-forties, respectively. ECF No. 40 ¶¶ 8, 12. In addition to showing favoritism to Ms. Henderson and Ms. Campbell, Ms. Kochka contends that "[Ms.] Feragotti also began to undermine Ms. Kochka's authority, exclude her from meetings[,] and treat her in an abusive and disrespectful manner." *Id.* ¶¶ 12–13. All the while, according to Ms. Kochka, Ms. Feragotti told other employees that she was going to fire Ms. Kochka and complained about older staff members, calling them "stupid," "dumb," "incompetent," or "old school." *Id.* ¶¶ 15, 17; ECF No. 29-1 at 227:1–8; ECF No. 35-3, Exs. 12, 37.

2

AHN generally disputes Ms. Kochka's narrative and many of the facts that comprise it. Instead, it contends that Ms. Kochka performed poorly in her new role and that many of the actions that Ms. Kochka perceived as favoritism towards Ms. Henderson and Ms. Campbell were taken at Ms. Kochka's behest. *See, e.g.*, ECF No. 27 at 17–18. AHN does not, however, dispute that relatively early in Ms. Feragotti's AHN tenure, she told Ms. Henderson and Ms. Campbell that Ms. Kochka would be fired, and that Ms. Henderson and Ms. Campbell would be "running the department." ECF No. 40 ¶ 37; ECF No. 35-2, Ex. 12.

Despite the competing narratives, there are several undisputed key occurrences. The first is that in September and October 2018—just after Ms. Feragotti's hiring—AHN's HR department began interviewing employees about Ms. Kochka's behavior and performance as Manager of Radiology Operations. ECF No. 33 ¶¶ 14, 16, 22. According to AHN, the interviews came in response to "concerns from" Ms. Henderson and Ms. Campbell "regarding [Ms. Kochka's] behavior." *Id.* ¶ 14. According to Ms. Kochka, it was AHN HR that reached out to Ms. Henderson and Ms. Campbell at Ms. Feragotti's behest. *Id.* Although the parties largely dispute the content of the interviews, Ms. Kochka does not dispute that in her own interview with HR she acknowledged a need to "work on somethings [sic]," "change the way I say things," and "change my style of issuing discipline." *Id.* ¶ 31. As a result of the investigation, AHN placed Ms. Kochka on a "performance improvement plan" ("PIP") largely focused on her communication with and treatment of subordinates. *Id.* ¶¶ 32–33. Ms. Feragotti supervised Ms. Kochka's progress on the plan, which included one-on-one leadership training, and Ms. Kochka successfully completed the plan in February 2019. ECF No. 40 ¶ 32.

The next key occurrence was in May 2019, when Ms. Campbell contacted an AHN HR representative, Alexandra Lieb, about taking a part-time position "because of management" and

personal issues.  ECF No. 35-2, Ex. 12.  In a follow-up conversation, Ms. Campbell elaborated on her management concerns but stated that she was "really scared about retaliation" by Ms. Feragotti because Ms. Campbell had "seen what [Ms. Feragotti] does to other employees."  *Id.*  Ms. Campbell explained that it was "obvious" that Ms. Kochka and Ms. Feragotti "hate one another," and that Ms. Feragotti would routinely talk about firing Ms. Kochka (along with other subordinates).  *Id.*  Ms. Campbell further explained that Ms. Feragotti's subordinates felt that Ms. Feragotti was "unapproachable" and "dismissive," was "really rubbing the staff the wrong way," and that "morale [was] low" as a result.  *Id.*  Ms. Lieb investigated these allegations, which other employees corroborated.  For example, one employee called Ms. Feragotti "rude[,] condescending, and disrespectful to the staff," ECF No. 35-2, Ex. 16, and another reported that he was scared to be alone with Ms. Feragotti, who had screamed at him over an issue, and worried that Ms. Feragotti was "going to blacklist" him, ECF No. 35-2, Ex. 17.  Yet another employee reported that Ms. Feragotti "targets people" and "had it out for [Ms. Kochka] since she came."  ECF No. 35-2, Ex. 20.  Based on her investigation, Ms. Lieb recommended disciplining Ms. Feragotti, but a higher-up "made the business decision to not move forward with discipline" after speaking with Ms. Feragotti.  ECF No. 35-2, Ex. 11 at 131:13–132:6.

The last key occurrence is Ms. Kochka's termination and the events preceding it.  In September 2019, Ms. Campbell approached AHN HR to raise concerns about Ms. Kochka's "obsession" over Ms. Campbell's and other employees' calendars, in a way that made her uncomfortable.  ECF No. 33 ¶ 52.  According to Ms. Campbell, Ms. Kochka was obsessed with her calendar because Ms. Kochka believed that she was being excluded from meetings by Ms. Feragotti.  ECF No. 40 ¶ 52; ECF No. 35-3, Ex. 61.  Around the same time, AHN HR also received a notice that Ms. Kochka had violated a collective bargaining agreement by offering a union

paramedic from another department work hours in radiology without first offering those work hours to union members within radiology.  ECF No. 40 ¶ 60.  The parties dispute whether Ms. Feragotti or a union representative initially brought the alleged violation of the collective bargaining agreement to AHN's attention.  ECF No. 40 ¶ 48.  HR also investigated reports that Ms. Kochka told subordinates to request raises, inappropriately excused tardiness (albeit on a single occasion), and expressed disagreement with subordinates' job duties.  ECF No. 33 ¶¶ 63– 66.  The parties dispute whether Ms. Kochka in fact violated the collective bargaining agreement, and the circumstances and significance of her communications regarding compensation and tardiness.  *Id.* ¶ 62.

On October 1, 2019, Ms. Feragotti and Ms. Lieb met with Ms. Kochka to discuss the reports described above.  Prior to the meeting, in AHN's words, "Ms. Feragotti had already been considering terminating [Ms. Kochka] and had received support from her senior business leaders." ECF No. 33 ¶ 83.  Ms. Lieb, however, testified that "[i]t would have been impossible . . . to make a determination on whether I thought termination was warranted without having met with [Ms. Kochka] to hear what she had to say about the claims."  *Id.*  When Ms. Kochka learned that there were new allegations against her, she "stopped the conversation" and told Ms. Lieb, "I'm filing harassment charges against [Ms. Feragotti]."  *Id.* ¶ 71.  Ms. Kochka says that she explained that Ms. Feragotti had harassed Ms. Kochka because of her age and "stated that she believed [Ms.] Feragotti was attempting to push her out in order to hand the department to younger people."  ECF No. 40 ¶ 60.  According to AHN, however, Ms. Kochka never mentioned age-based harassment, and only reported "harassment" generally during this meeting.  *Id.*;  ECF No. 33 ¶ 71.  After a subsequent meeting with Ms. Kochka and internal discussions, Ms. Lieb recommended Ms. Kochka's termination.  ECF No. 40 ¶ 70.  On November 15, 2019, AHN issued a written

termination decision, listing the various bases in support of the decision, and terminated Ms. Kochka effective immediately.  ECF No. 33 ¶¶ 87–88.  Ms. Feragotti then promoted Ms. Campbell into Ms. Kochka's vacant position.  ECF No. 40 ¶ 77.

Separately, on November 13, 2019, as a result of Ms. Lieb's investigation of Ms. Kochka's allegations against Ms. Feragotti, AHN placed Ms. Feragotti on a PIP for "not following the core behavior of trust and working together."  ECF No. 29-28 at 1.  During Ms. Lieb's investigation of Ms. Kochka's harassment allegations, four employees "confirmed Ms. Kochka's allegations [against Ms. Feragotti] and lodged additional complaints about [Ms.] Feragotti."  ECF No. 40 ¶ 67.  The PIP noted that staff "stated that they are afraid of [Ms. Feragotti] and think if they speak up they will lose their job," and that Ms. Feragotti was disrespectful in her interactions with staff. ECF No. 29-28 at 1–2.  In November 2020, AHN terminated Ms. Feragotti after it "received new allegations concerning Ms. Feragotti's behavior."  ECF No. 33 ¶ 94;  ECF No. 29-29.

## II.    Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks omitted). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 586–87 (internal quotation marks omitted). Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal quotation marks omitted). Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

## III.    Analysis

Ms. Kochka asserts two theories of discrimination against AHN:  (1) a disparate treatment claim that AHN fired her because of her age;  and (2) a retaliation claim that AHN fired her because she complained about age-based harassment by Ms. Feragotti.  AHN moves for summary judgment as to both theories, arguing that no reasonable juror could find that it discriminated or retaliated against Ms. Kochka.  Because the Court concludes that there are genuine disputes of material fact that preclude summary judgment, it will deny AHN's Motion.

### A.    Legal Framework

Ms. Kochka's two theories of liability arise under the ADEA, PHRA, and Pittsburgh City Code.  *See* ECF No. 1 ¶¶ 30–32.  There is no dispute, however, that "[a]ge discrimination and retaliation claims under these laws are analyzed coextensively."  ECF No. 27 at 6 n.3.  The Court agrees and will analyze Ms. Kochka's two claims under the framework developed for analyzing ADEA claims, without further reference to the PHRA or Pittsburgh City Code.  *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (recognizing that "the interpretation of the PHRA is identical to that of federal antidiscrimination laws, including the ADEA");  *Ganaway v. City of Pittsburgh*, No. 2:05-cv-1657, 2008 WL 336297, at *4 (W.D. Pa. Feb. 4, 2008) (McVerry, J.) ("The same legal standards govern the Title VII, ADEA and Pittsburgh City Code claims, which will be addressed collectively."  (citing *City of Pittsburgh, Dep't of Pub. Works v. Foster,* 669 A.2d 492 (Pa. Commw. 1995))).  Both parties analyze Ms. Kochka's claims using the familiar framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), which generally applies in cases—like this one—without direct evidence of discrimination.  *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015);  ECF No. 27 at 8;  ECF No. 32 at 7.

The *McDonnell Douglas* analysis has three steps.  First, the plaintiff must produce evidence of a prima facie case of discrimination, which consists of different elements depending on whether the claim is for retaliation or some other form of discrimination.  *See Daniels*, 776 F.3d at 193 (discussing prima facie case of retaliation);  *Burton*, 707 F.3d at 426 (3d Cir. 2013) (discussing prima facie case of disparate treatment).  If the plaintiff satisfies her burden, the defendant must produce evidence of "a legitimate, non-retaliatory [or non-discriminatory] reason for having taken the adverse action."  *Daniels*, 776 F.3d at 193.  Finally, if the defendant satisfies its burden of production, the burden of production shifts back to the plaintiff, who must produce "evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination."  *Burton*, 707 F.3d at 426.  Although the *McDonnell Douglas* framework contemplates a shifting burden of *production*, the burden of *persuasion* always remains with the plaintiff.  *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

### B.      AHN Is Not Entitled to Summary Judgment

With the *McDonnell Douglas* framework in mind, AHN's Motion presents two arguments for summary judgment.  First, AHN argues that Ms. Kochka cannot establish a prima facie case of retaliation.  Because AHN does not raise a similar argument regarding Ms. Kochka's disparate treatment claim, the Court will assume that Ms. Kochka can make out a prima facie showing there. There is similarly no dispute that AHN has presented a legitimate, nondiscriminatory reason for terminating Ms. Kochka—namely, poor performance.  AHN's second argument, therefore, is that Ms. Kochka cannot show that AHN's stated reasons for terminating her were false, and that AHN in fact terminated her because of her age or in retaliation for reporting age-based harassment. Considering these arguments in turn and the record presented by the parties, the Court concludes that there are genuine disputes of material fact that preclude summary judgment.

### 1.    Ms. Kochka Has Presented a Prima Facie Case of Retaliation

Beginning with Ms. Kochka's prima facie case of retaliation, she must show "(1) that she engaged in protected employee activity;  (2) adverse action by the employer either after or contemporaneous with the employee's protected activity;  and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Daniels*, 776 F.3d at 193 (cleaned up).  The parties dispute the first and third elements.  The Court finds that there is sufficient evidence to support Ms. Kochka's claim that she engaged in a protected activity by reporting age-based harassment by Ms. Feragotti and that there is a causal connection between that report and her subsequent termination.

AHN argues that Ms. Kochka reported only generalized "harassment" by Ms. Feragotti, without mentioning age, which it claims is not a protected activity under the ADEA.[3]  *See Curay-Cramer v. Ursuline Acad. of Wilmington Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity . . . .");  *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) ("[A] person has engaged in 'protected conduct' when s/he opposes discrimination on the basis of age.").  Ms. Kochka responds with a declaration stating that at the October 1, 2019 meeting, she told Ms. Lieb that she "believed that [Ms.] Feragotti was harassing [her] because of [her] age" and "was attempting to push [her] out in order to hand the department to younger people."  ECF No. 35-3, Ex. 37 ¶ 18.  AHN counters that this Court should disregard Ms. Kochka's declaration under the sham-affidavit doctrine because the declaration contradicts her deposition testimony.  Under that doctrine, "[w]hen, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the

---

[3] At this time, Ms. Kochka does not dispute that if AHN's telling of the October 1, 2019 meeting is accurate, Ms. Kochka's generalized complaint of harassment would not qualify as "protected activity" under the ADEA. Accordingly, the Court will assume, without deciding, that AHN is correct that a generalized complaint of "harassment," without mentioning age in some fashion, is insufficient to make out a prima facie case under the ADEA.

district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991).

The Court finds that Ms. Kochka's declaration is not a sham, because it does not contradict the deposition testimony relied on by AHN.  According to AHN, Ms. Kochka's declaration contradicts her deposition testimony because she never mentioned harassment *because of age* when describing the October 1, 2019 meeting and acknowledged that Ms. Lieb's notes from that meeting, which did not mention a claim of *age-based* harassment, were accurate.  ECF No. 41 at 9.  However, when asked about the substance of the October 1, 2019 meeting, Ms. Kochka testified that she reported harassment and "went over what my harassment charges were about."  ECF No. 29-1 at 168:18–170:1.  Although Ms. Kochka did not mention age-based harassment specifically, her open-ended response left room for the possibility that she mentioned age in describing "what [her] harassment charges were about."  *Id.* at 169:3–5.  Thus, her declaration does not contradict her testimony—it supplements it.  Notably, AHN's counsel did not follow up to ask whether Ms. Kochka specifically mentioned harassment because of her age, a question that could have put the issue to rest.  As to Ms. Kochka's testimony regarding HR's notes, she merely testified that the notes appeared to "accurately summarize the order in which things were discussed," *id.* at 176:7–10, which does not contradict her declaration regarding the substance of her harassment allegation.  AHN also directs the Court to Ms. Kochka's testimony regarding the substance of a subsequent meeting with HR, *see* ECF No. 41 at 9 (citing ECF No. 33 ¶ 77 (cross-referencing Ms. Kochka's testimony at ECF No. 29-1 at 177:8–179:10)), but that testimony cannot contradict her declaration about the substance of the October 1, 2019 meeting.  Because AHN has not directed the Court to testimony that contradicts Ms. Kochka's declaration, the sham-affidavit doctrine does not apply.

Accordingly, Ms. Kochka has established a genuine dispute of material fact as to whether she engaged in a protected activity—namely, reporting age-based harassment.

Turning to the causal connection between Ms. Kochka's protected activity and her termination, the parties' dispute covers more of the record, consistent with principle that a plaintiff may rely on "a broad array of evidence" to satisfy this element of a prima facie case. *Daniels*, 776 F.3d at 196. One way to establish a causal connection is an "unusually suggestive" temporal proximity between the protected activity and the adverse action. *Id.* However, that is not the only way to establish a causal connection and courts will "consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Id.*; *see also Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 311 (W.D. Pa. 2020) (Hornak, C.J.).

Considering the record, the Court finds that Ms. Kochka has presented sufficient evidence of a causal link between her termination and complaint of age-based harassment. The thrust of AHN's argument is that it terminated Ms. Kochka because of poor performance predating her harassment complaint, pointing to evidence that AHN had considered termination as an option ahead of the October 1, 2019 meeting. The Court agrees that this evidence that AHN was already considering termination prior to the protected activity is enough that the time elapsed between the report of harassment and Ms. Kochka's termination in November 2019 is not "unusually suggestive." However, AHN asserts only that it was *considering* termination prior to the meeting, and Ms. Lieb testified that she could not make a decision to terminate without first discussing the issues with Ms. Kochka. ECF No. 33 ¶ 83. And as set forth in the next section, there is reason to doubt AHN's stated reasons for terminating Ms. Kochka. Particularly compelling is the evidence

that in November 2019, an AHN HR representative who reviewed the first draft of Ms. Kochka's written termination decision expressed doubt as to whether the stated reasons supported termination as opposed to a lesser sanction under AHN's progressive disciplinary policy. *See infra* at 14–16. Only after that discussion did AHN add further bases to the termination decision, raising a reasonable question as to whether the stated reasons were the true reasons for Ms. Kochka's termination. Viewing these facts and the record in the light most favorable to Ms. Kochka, the circumstances surrounding her termination and undermining AHN's stated reasons for her termination are sufficient to establish a causal connection. Accordingly, Ms. Kochka has met her burden to establish a prima facie case of retaliation under the ADEA.

### 2.   Genuine Issues of Fact Exist Regarding Pretext

Ms. Kochka does not dispute that AHN has proffered a legitimate, nondiscriminatory reason for her termination, such that the only remaining question is whether she can carry her burden to show that AHN's "proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426. Generally, a plaintiff may carry her burden at this step by pointing to evidence that would allow a factfinder to (1) "disbelieve the employer's reason for the adverse employment action" or (2) "believe that an invidious discriminatory reason was 'more likely than not a . . . determinative cause' of the employer's action." *Willis*, 808 F.3d at 644 (quoting *Fuentes*, 32 F.3d at 764). Ms. Kochka's arguments take the former approach, so she must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Burton*, 707 F.3d at 427 (internal quotation marks omitted). Bearing in mind that "the question is not whether the employer made the best, or even a sound, business

decision; it is whether the real reason is discrimination," *Willis*, 808 F.3d at 647 (cleaned up), the Court nevertheless finds that Ms. Kochka has satisfied her burden.

In terminating Ms. Kochka effective November 15, 2019, AHN issued a written decision setting forth five "area(s) of concern" that purportedly supported termination. *See generally* ECF No. 29-21. First, the decision stated that Ms. Kochka had "failed to correct" the behaviors identified in her earlier PIP, such as "engag[ing] with staff in a manner . . . reported as intimidating and uncomfortable." *Id.* at 1. Second, the decision referenced Ms. Kochka's violation of the collective bargaining agreement by offering hours to an out-of-department employee "without first posting and offering the hours to [employees] in the department." *Id.* Third, the decision referenced Ms. Kochka's decision to "subjectively excuse employees' attendance occurrences based on [her] opinion as to whether or not the reasons for the late occurrences were excusable," in violation of AHN's attendance policies. *Id.* at 2. Fourth, the decision faulted Ms. Kochka for instructing subordinates to ask for pay increases, which "caused confusion and distrust among . . . staff members." *Id.* Finally, and "[i]n the same vein," the decision faulted Ms. Kochka for inappropriately expressing disagreement with the scope of her subordinates' job duties. *Id.* The decision concluded that Ms. Kochka's "continued behaviors [were] inappropriate, not in line with [AHN's] Core Behaviors[,] and [would] not be tolerated. As a result, [Ms. Kochka was] terminated, effective immediately." *Id.*

Ms. Kochka argues that these reasons are not worthy of credence. Initially, she points to two considerations that the Court agrees are particularly persuasive in light of the record as a whole. First, Ms. Kochka directs the Court to an earlier draft of her written termination decision, which omitted most of the "area(s) of concern" that ended up in the final decision. Specifically, that earlier draft referenced only Ms. Kochka's interactions with subordinates regarding their

compensation and scope of work as the grounds for her termination. ECF No. 35-3, Ex. 70. Second, Ms. Kochka points to the internal discussion of that draft, in which one of Ms. Lieb's colleagues expressed doubt about terminating Ms. Kochka. That discussion began when Ms. Lieb forwarded the draft to the colleague to review, stating, "Need some (truly) expert eyes. Hard to find these days . . . ." *Id.* After reviewing the draft, the colleague responded,

> I have to be honest. I have concerns with jumping . . . to termination. The PIP was, seemingly, successfully completed in February of 2019. . . . I'm not sure that discussing pay rates and job duties with staff outside of leadership's direction (i.e., what's in the term[ination] notice) warrants termination versus [a lesser disciplinary action].

ECF No. 35-3, Ex. 71. The colleague went on to note Ms. Kochka's protected status, having earlier referenced the possibility of a discrimination claim by Ms. Kochka. *Id.* Only after this discussion did AHN add the additional "area(s) of concern" referenced in the final termination decision. *See* ECF No. 29-21; ECF No. 35-3, Ex. 72.

Together, and viewed in the light most favorable to Ms. Kochka, a rational juror could conclude that the reasons given in Ms. Kochka's termination decision were not the real reason for her termination. As to Ms. Kochka's interactions with subordinates regarding compensation and scope of work, it is significant that an "expert" colleague was unpersuaded that they warranted termination under AHN's disciplinary policy. *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 306–07 (3d Cir. 2007) (jury could find stated reasons unworthy of credence where there were significant changes between final and initial drafts of memorandum recommending termination). And the additional bases—intimidating behavior, the collective bargaining violation, and excusing tardiness in violation of AHN policy—were added only after that colleague expressed her doubts and raised the specter of a discrimination claim. The initial omission of these bases suggests that, even if AHN concluded that the violations had occurred, it did not consider them an appropriate basis for *termination*, as opposed to some other form of discipline. All of this is compounded by

15

the facts that under AHN's progressive disciplinary policy, termination should generally come only after a "final written warning," which Ms. Kochka never received, *see* ECF No. 42-4 at 2; ECF No. 33 ¶ 32;  ECF No. 40 ¶¶ 81–82, and that Ms. Lieb's investigations corroborated many of Ms. Kochka's allegations, ECF No. 40 ¶ 67; ECF No. 35-2, Exs. 12, 16, 17.

The record also reflects additional weaknesses in AHN's stated rationale for terminating Mr. Kochka.  Beginning with Ms. Kochka's asserted collective bargaining violation, the evidence shows that even Ms. Feragotti—the supervisor who allegedly wanted to force Ms. Kochka out— expressed uncertainty in an email as to whether to pursue the issue in the absence of a union grievance, suggesting that any infraction was minimal.  *See* ECF No. 35-3, Ex. 26.  Similarly, as to Ms. Kochka improperly excusing tardiness, it appears that the issue pertained to a single event and never recurred after AHN advised Ms. Kochka that it should confirm such decisions with more senior personnel before acting.  *See* ECF No. 35-3, Ex. 28.  Turning to the issues of discussing pay increases and scope of work with subordinates, it is unclear how discussing these topics violated AHN policy, the evidence suggests that the interactions may have been prompted by the employees themselves, and there is evidence that Ms. Feragotti had broadly similar compensation discussions with subordinates.  *See* ECF No. 40 ¶ 34.  Finally, as to the assertion of "intimidating and disrespectful" behavior, the only example given is of "micro-managing behaviors such as [reviewing] the calendars of your [subordinates] and director [and] questioning them about meetings that you felt you had not been included in."  ECF No. 29-21 at 1.  Notably, Ms. Lieb's investigation uncovered evidence that Ms. Kochka had been excluded from meetings, and her investigation of Ms. Feragotti in May 2019 confirmed that Ms. Feragotti was actively interested in firing Ms. Kochka.  ECF No. 35-2, Exs. 12, 16, 17.  These weaknesses in AHN's rationale for terminating Ms. Kochka, together with the evidence that most of the stated bases were omitted

from the original draft of Ms. Kochka's termination decision and the doubt expressed over those that were included, are sufficient for a reasonable juror to find that AHN's explanation "was false, and that [discrimination] was the real reason for the adverse employment action." *Daniels*, 776 F.3d at 193; *see Marra*, 497 F.3d at 306–07 (upholding retaliation verdict where jury could reasonably find employer's rationale "highly suspect").

While the above analysis applies to both of Ms. Kochka's claims, there is further "cat's paw" evidence that supports a finding of pretext specific to her disparate treatment claim. Under a "cat's paw" theory, "an employer may be liable for employment discrimination if the source of illegal animus was not the final employment decision-maker but rather another employee whose animus proximately caused the adverse employment action at issue in the case." *Mason v. Se. Penn. Trans. Auth.*, 134 F. Supp. 3d 868, 874 (E.D. Pa. 2015).

At this stage, there is no dispute that Ms. Feragotti proximately caused Ms. Kochka's termination by reporting Ms. Kochka's purported misconduct to HR and seeking and obtaining support for Ms. Kochka's termination. Instead, AHN argues that Ms. Feragotti did not act with discriminatory animus. However, there is sufficient evidence to support a contrary finding. In particular, Ms. Kochka has pointed to evidence that Ms. Feragotti favored younger employees such as Ms. Henderson and Ms. Campbell and sought to fire Ms. Kochka and turn the Radiology Department over to them. Further, Ms. Kochka points to evidence that Ms. Feragotti was abusive towards older employees, and AHN's investigation confirmed many of Ms. Kochka's allegations. Viewing the evidence in the light most favorable to Ms. Kochka, a reasonable juror could find that Ms. Feragotti acted with discriminatory animus, such that Ms. Kochka's cat's paw evidence supports her argument that AHN's stated reasons for terminating her are pretextual. *See, e.g.*, *Howell v. Raymours Furniture Co.*, 26 F. Supp. 3d 366, 375 (M.D. Pa. 2014) (finding cat's paw

theory viable where supervisor was "very dismissive" of older employees and was a "totally different person" when interacting with younger employees).

AHN's contrary arguments are ultimately unpersuasive.  Initially, AHN criticizes Ms. Kochka's briefing as an "attempt to second-guess [AHN's] business judgment," arguing that "whether Plaintiff disagrees with [AHN's] factual conclusions or concerns about the gravity of her actions is immaterial."  ECF No. 41 at 1, 3.  AHN is correct, insofar as it argues that the Court is "not 'a super-personnel department' tasked with correcting unduly harsh employment actions," ECF No. 41 at 2 (quoting *Klimek v. USW Local 397*, 618 Fed. App'x 77, 80 (3d Cir. 2015)), but it does not follow that weaknesses in AHN's rationale for terminating Ms. Kochka are "immaterial" to the inquiry, ECF No. 41 at 3.  On the contrary, "weaknesses" in an employer's rationale for taking an adverse employment action are probative of whether that rationale is "unworthy of credence."  *Burton*, 707 F.3d at 427.  Thus, Ms. Kochka may fairly rely on such weaknesses in arguing pretext, and the Court finds that she has done so.  Certainly, there is evidence that suggests that the reasons AHN presented in Ms. Kochka's final termination decision were the real reasons for her termination.  For example, AHN is correct that its progressive disciplinary policy allows AHN to skip disciplinary steps where appropriate under the circumstances.  *See* ECF No. 42-4. And AHN is correct that there was evidence from which a reasonable juror could find that Ms. Kochka was a poor manager worthy of termination.  But that evidence highlights the need for a jury to resolve the disputed material facts that speak to whether AHN terminated Ms. Kochka for those stated reasons or because of her age or because she reported age-based harassment.  Because Ms. Kochka has carried her burden under the *McDonnell Douglas* framework to rebut AHN's legitimate, nondiscriminatory reason for terminating her employment, summary judgment is unwarranted.

**IV.     Conclusion**

For the foregoing reasons, AHN's Motion for Summary Judgment is DENIED.


DATED this 24th day of February, 2023.


                                        BY THE COURT:


                                        /s/ Christy Criswell Wiegand
                                        CHRISTY CRISWELL WIEGAND
                                        United States District Judge


cc (via ECF email notification):
All Counsel of Record