IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSE KOCHKA,<br><br>        Plaintiff,<br><br>   v.<br><br>WEST PENN ALLEGHENY HEALTH<br>SYSTEM INC.,<br><br>        Defendant. | **2:21-CV-01349-CCW** |

## OPINION AND ORDER

In this case, Plaintiff Rose Kochka brings claims against West Penn Allegheny Health System Inc. ("WPAHS") under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq.*, and the Pittsburgh City Code, Article 5 §§ 651.01 *et seq.*  The claims arise from Ms. Kochka's past employment with WPAHS.  In brief, Ms. Kochka contends that WPAHS discriminated against her based on her age and retaliated against her by terminating her for reporting alleged discrimination.  Before the Court are seven motions in limine (six filed by Ms. Kochka and one filed by WPAHS), which the Court will resolve as follows.

### I.    Legal Standard

A court's authority to rule on motions in limine comes from its inherent authority to manage trial proceedings before it, not from the Federal Rules of Evidence. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Consistent with that authority, a court may screen irrelevant or otherwise improper evidence, thereby "narrow[ing] the evidentiary issues for trial and . . .

eliminat[ing] unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990);  *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988) ("A trial judge has a duty to limit the jury's exposure to only that which is probative and relevant and must attempt to screen from the jury any proffer that it deems irrelevant.").  That said, a "trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, 2019 WL 3573663, at *3 (W.D. Pa. Aug. 6, 2019) (Gibson, J.) (internal citation omitted).

Here, the parties' motions in limine implicate Federal Rules of Evidence 402 and 403, among others.  Rule 402 establishes the cornerstone rule that only relevant evidence is potentially admissible;  irrelevant evidence, in contrast, is always inadmissible.  Evidence is relevant if it tends to make a fact of consequence to the action more or less probable.  Fed. R. Evid. 401.  Though potentially admissible, relevant evidence may nevertheless be excluded by the Constitution, a federal statute, caselaw, or another of the Federal Rules of Evidence.  *See* Fed. R. Evid. 402.  One such rule is Rule 403.  It allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Unfair prejudice is evidence with an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Pirl v. Sergeant*, 619 F. Supp. 3d 531, 537 (W.D. Pa. 2022) (Gibson, J.) (internal quotation marks omitted).  The decision to exclude evidence under Rule 403 falls within the trial court's discretion. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995).

## II.   Plaintiff's Motion in Limine to Limit the Testimony of Andrea Campbell and Morgan Henderson, ECF No. 74

Ms. Kochka first moves to limit the testimony of Ms. Campbell and Ms. Henderson, who directly reported to Ms. Kochka,[1] regarding their "experiences, impressions, and employment relationship with Ms. Kochka and [Ms. Kochka's direct supervisor] Ms. Feragotti." ECF No. 75 at 1.  Ms. Kochka also seeks to limit Ms. Henderson's testimony regarding "Ms. Kochka's management style including the manner in which she spoke to chief technologists as well as conversations Ms. Kochka had with her direct reports involving pay increases.…" ECF No. 75 at 1. Ms. Kochka argues that this testimony is irrelevant to her claims and WPAHS' defenses because Ms. Campbell and Ms. Henderson were not decision makers with regard to Ms. Kochka's termination.  Therefore, their personal experiences, of which the decision makers for Ms. Kochka's termination did not have knowledge, are not relevant to WPAHS' motive for terminating Ms. Kochka.  WPAHS responds that Ms. Campbell and Ms. Henderson, both of whom reported to Ms. Kochka, complained about Ms. Kochka to WPAHS, which resulted in WPAHS' investigation(s) of Ms. Kochka and contributed to Ms. Kochka's termination.  ECF No. 111 at 2.

The Court will deny the Motion.  As WPAHS points out, Ms. Kochka appears to acknowledge the relevance of this testimony, given that she intends to call Ms. Campbell and Ms. Henderson to testify regarding their "observations of Ms. Kochka's and Feragotti's (sic) work ethic, competence, and leadership style." ECF Nos. 111 at 2, 67 at 2–3.  The testimony of Ms. Campbell and Ms. Henderson regarding their experience with Ms. Kochka and Ms. Feragotti is relevant to both Ms. Kochka's claims and WPAHS' defenses, including the reasons it terminated Ms. Kochka.  And the Court finds that the probative value of such testimony is not substantially outweighed by the danger of unfair prejudice.

---

[1] Ms. Henderson was later promoted to a peer position to Ms. Kochka.

### III.   Plaintiff's Motion in Limine to Preclude the Testimony of Michael Weber, ECF No. 76

Ms. Kochka next moves to prevent WPAHS from calling Mr. Weber, a Workforce Relations Consultant for WPAHS, at trial.   Ms. Kochka argues that Mr. Weber's anticipated testimony regarding a complaint he received from Ms. Campbell about Ms. Kochka, which he memorialized in an email to Ms. Feragotti, is double and triple hearsay.   ECF No. 77 at 1.   WPAHS responds that Mr. Weber's testimony is not hearsay because it is not being offered for the truth of the matter—to prove that Ms. Campbell's complaint about Ms. Kochka is true—rather, to show that a complaint was made about Ms. Kochka.   ECF No. 111 at 3–6.

The Court will grant Plaintiff's Motion.   Hearsay—an out-of-court statement presented for the truth of the matter asserted—is generally inadmissible.   Fed. R. Evid. 801(c), 802.   An out-of-court statement is not hearsay if presented for some purpose other than to establish the truth of the matter asserted.   *See id.*   Even if a statement satisfies the standard hearsay definition, an exception to the hearsay rule may render it admissible.   *See generally* Fed. R. Evid. 803, 804.   The Court agrees with Ms. Kochka that testimony by Mr. Weber regarding his conversation with Ms. Campbell is inadmissible hearsay.   As that conversation is the sole topic of Mr. Weber's testimony, Mr. Weber should be precluded from testifying at trial.

It is generally true, as WPAHS argues, that complaints made to a supervisor and/or decision-maker about an employee can constitute nonhearsay testimony where the complaint is offered not to prove the truth of the matter, but to provide an explanation or state of mind of the decision-maker.   *See* ECF No. 111 at 5–6.   Here, however, Mr. Weber is neither Ms. Kochka's supervisor nor a decision-maker.   Ms. Feragotti, as Ms. Kochka's supervisor, is available to testify as to any complaint she received against Ms. Kochka.   Ms. Campbell, who allegedly made the

complaint to Mr. Weber, is available to testify as to any complaint she made against Ms. Kochka. Therefore, Ms. Campbell's out-of-court statements to Mr. Weber are inadmissible hearsay.

### IV. Plaintiff's Motion in Limine to Preclude Evidence or Argument Regarding Beverly Feragotti's Termination, ECF No. 78

Ms. Kochka moves to exclude evidence or argument regarding the termination of her direct supervisor, Ms. Feragotti, arguing that Ms. Feragotti is not a proper comparator. ECF No. 78. Ms. Kochka's main argument is that she and Ms. Feragotti are not similarly situated because they were not terminated by the same decision-makers. ECF No. 79 at 2. WPAHS opposes the Motion and contends that evidence regarding Ms. Feragotti's termination is relevant to show that its decision to fire Ms. Kochka was not pretextual. Specifically, WPAHS asserts that Ms. Feragotti is a proper comparator because Ms. Kochka and Ms. Feragotti, despite having different job duties, were held to the same WPAHS Core Behaviors and Standard of Conduct, were both placed on performance improvement plans due to a failure to abide by such standards, and both were found to have violated those standards following the performance improvement plans. ECF No. 111 at 8. It is undisputed that Mr. Jeffrey Hoffman, Vice President of Imaging Institute, participated in both Ms. Kochka's and Ms. Feragotti's termination.

The Court will grant Plaintiff's Motion. District Courts must conduct the similarly situated analysis in the first instance since it involves questions of relevancy. *See Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("[Q]uestions of relevance and prejudice are for the District Court to determine in the first instance."). "In response to a motion in limine a court can exclude comparator evidence where the individuals are not 'similarly situated' and thus are either irrelevant or create a serious risk of confusing or misleading the jury." *Boyer v. City of Philadelphia*, No. CV 13-6495, 2018 WL 4252378, at *7 (E.D. Pa. Sept. 6, 2018).

"Which factors are relevant is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). Here, the Court agrees with Ms. Kochka and finds that Ms. Feragotti and Ms. Kochka are not similarly situated, for several reasons.

*First*, Ms. Kochka and Ms. Feragotti undisputedly held different positions and performed different job duties. ECF No. 111 at 7. Before their respective terminations, Ms. Kochka served as an Operations Manager in the Radiology Department, and Ms. Feragotti served as an Imaging Services Regional Administrator. ECF Nos. 71 at 1, 79-1 at 2. Ms. Kochka directly reported to Ms. Feragotti who, in turn, directly reported to Mr. Hoffman. ECF No. 111 at 7. This fact alone renders Ms. Kochka and Ms. Feragotti not similarly situated. *See McGinnis v. Donahoe*, 2015 WL 507043 at *8 (W.D. Pa. Feb. 6, 2015) (Conti, J.) (holding employee who served as plaintiff's supervisor was not in a similar position as plaintiff and cannot be similarly situated to plaintiff).

*Second*, the conduct leading to their respective terminations was not comparable and there are differentiating circumstances. Contrary to WPAHS' assertion, the fact that Ms. Kochka and Ms. Feragotti were subject to the same disciplinary policies does not, alone, render them valid comparators. *See Calero v. Cardone Industries, Inc.*, No. 11-3192, 2023 WL 2547356, at *14 (E.D. Pa. June 19, 2012) ("That all employees were subject to the same disciplinary policies— here, the PIP—does not render all Cardone employees valid comparators.") (citing *Opsatnik*, 335

6

F. App'x at 222–24).  While they were both terminated for an issue with their respective job performances, Ms. Kochka's conduct related to inappropriate, intimidating, and disrespectful communications with staff, while Ms. Feragotti's conduct related to a failure to complete her job duties.  *Compare* ECF No. 111-1 with 111-5.  In addition, the circumstances leading up to Ms. Feragotti's termination are distinguishable from those leading up to Ms. Kochka's.  Prior to terminating Ms. Feragotti, WPAHS decided to transfer her to another location.  ECF No. 111-5 at 2.  Only when Ms. Feragotti disagreed with the transfer and was overheard discussing it with her subordinates, despite requests not to do so, was Ms. Feragotti terminated.  *Id.*  Ms. Kochka, notably, was not offered the option to transfer but was instead terminated.  Overall, Ms. Kochka's and Ms. Feragotti's conduct preceding their terminations was not comparable.  *See, e.g.*, *Ward v. City Lighting Products Co*., No. 20-208, 2021 WL 1720661, at *6 (W.D. Pa. April 30, 2021) (Fischer, J.) (finding "significant differentiating and mitigating circumstances" that precluded a finding of employee as comparator); *Ewell v. NBA Properties, Inc.*, 94 F.Supp.3d 612, 625–27 (D.N.J. 2015) (considering the conduct of plaintiff and the proposed comparators and finding their situations not comparable); *Connearney v. Main Line Hospitals, Inc.*, No. 15-02730, 2016 WL 6569326, at *6 (E.D. Pa. Nov. 4, 2016) ("The standard articulated by the Third Circuit contemplates *both* that the comparator engaged in the same or similar behavior or actions *and* that his offense was of comparable seriousness to that of the plaintiff.").

*Third*, Ms. Kochka and Ms. Feragotti were not terminated by the same decision-makers. WPAHS' decision to terminate Ms. Kochka was made by three people:  Ms. Feragotti; Mr. Hoffman; and Ms. Alexandra Lieb, Employee Relations Consultant.  The decision to terminate Ms. Feragotti appears to have been made by two people:  Dr. Bethany Casagranda, Chair of the Department of Radiology, and Mr. Hoffman.  ECF No. 111-5.  Mr. Hoffman is the only

overlapping decisionmaker and the remaining decisionmakers were not the same. Where employees are disciplined by different supervisors or decision-makers the employees are not similarly situated. *Wilcher*, 441 F. App'x at 882 (holding proffered comparator not comparable "because she held a superior position and thus it was at the discretion of a different supervisor not to terminate her"); *Parker v. Farley*, 625 F. App'x 77, 83 (3d Cir. 2015) (holding employees not similarly situated because the "comparators were disciplined by supervisors other than Parker's"); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) ("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable…").

For all of the above reasons, the Court concludes that Ms. Kochka and Ms. Feragotti are not appropriate comparators, and therefore, evidence regarding Ms. Feragotti's termination is not relevant and will be excluded.

### V.   Plaintiff's *Daubert* Motion to Preclude and/or Limit the Testimony of Chad Staller, ECF No. 80

Ms. Kochka has filed a motion under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to preclude all opinions offered by WPAHS' damages and mitigation expert Chad Staller "because his opinion is based on unreliable methodology and incorrect data." ECF No. 81 at 1. Ms. Kochka specifically objects to: (1) Mr. Staller's reliance on certain Department of Labor statistics in calculating Ms. Kochka's economic damages; (2) Mr. Staller's failure to calculate adverse tax consequences; (3) Mr. Staller's qualifications and methodology of identifying employment opportunities available to Ms. Kochka; and (4) Mr. Staller's reliance on the Pennsylvania Office of Unemployment Compensation in

opining on whether Ms. Kochka mitigated her damages.  WPAHS responds that each of these opinions is proper.  The Court will consider each in turn.

Under Rule 702, a witness "qualified as an expert by knowledge, skill experience, training, or education" may offer their expert opinion on a matter if:  (a) their expertise would "help the trier of fact to understand the evidence or . . . determine a fact in issue";  (b) the opinion "is based on sufficient facts or data";  (c) the opinion "is the product of reliable principles and methods"; and (d) those principles and methods have been "reliably applied . . . to the facts of the case." Consistent with Rule 702, *Daubert* teaches that district courts have a "'gatekeeping' obligation to [e]nsure that only reliable and relevant expert testimony be presented to jurors." *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 112 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 597).  In discharging this obligation, the court "must ensure that expert testimony satisfies a 'trilogy of restrictions':  qualification, reliability, and fit." *Id.* (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)).  Ultimately, "[t]he overriding consideration with regard to these three requirements is that expert testimony should be admitted if it will assist the trier of fact. *Id.* (citing *United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995)).

***First***, the Court agrees with Ms. Kochka that Mr. Staller's reliance on the Bureau of Labor statistics renders his opinion on the duration of loss (Section IX.1) unreliable.  Therefore, to the extent his calculation of economic damages (Section IX.6) relies solely on the Bureau of Labor statistics, it is unreliable as well.  *See* ECF No. 81-1 at 9, 11.  Specifically, Mr. Staller relies on the "Worker Displacement:  2019-2021" *Current Population Survey* from the U.S. Census Bureau. ECF No. 81-3.  The survey defines "Displaced Workers," in relevant part, as those who "lost or left jobs because their plant or company closed or moved, there was insufficient work for them to do, or their position of shift was abolished."  ECF No. 81-3 at 1.  Relying on this survey, Mr.

Staller opines that three years is the reasonable length of time that it would take Ms. Kochka to catchup to her previous earnings level.  ECF No. 81-1 at 9.  However, Mr. Staller acknowledges that the "circumstances of [Ms. Kochka's] separation of employment at issue are not identical to those of a Displaced Worker as defined by the survey" but states "since there is no data set which specifically measures the duration of earnings differential given the plaintiff's separation of employment in this matter, we reference the above data as a proxy to estimate the reasonable length of time following the separation that it will take [Ms. Kochka] to catchup to his [sic] previous earnings level."  *Id.* at 81-1 at 9 n. 37.  The Court agrees that the Bureau of Labor statistics are not reliable because Ms. Kochka was terminated and therefore does not fall within the definition of "Displaced Worker."  Mr. Staller offers no basis as to why a data set involving non-terminated workers is instructive for a determination regarding a worker who has been terminated for cause. *See Branch v. Temple University et al.*, No. 20-cv-2323, 2021 WL 2823071, at *5 (E.D. Pa. July 7, 2021) (excluding Mr. Staller's opinion based on 2017-19 Worker Displacement Bureau of Labor Statistics because "[t]here is no reliable link, as required by *Daubert*, between the results of the 'displaced workers' survey and the lost front pay calculations in the Staller Report").

Seeking to admit the opinion, WPAHS argues that Mr. Staller "actually has afforded Plaintiff seven years from the time of her separation from WPAHS in November 2019 to mitigate her damages" because "Mr. Staller conservatively completed his analysis on a prospective basis only and thus applied the three-year period from the time of his report."  ECF No. 112 at 3 n. 1. WPAHS misconstrues Ms. Kochka's argument, and its position is not supported by Mr. Staller's report.  As previously stated, Mr. Staller relies on Bureau of Labor statistics which state that displaced workers achieve or exceed earnings parity of their prior compensation in three years, and opines that Ms. Kochka should achieve or exceed earnings parity of her compensation in three

years.  ECF No. 81-1 at 9.  Mr. Staller states that the period of three years is calculated, not from the date of the May 2023 report, as WPAHS asserts, but from January 1, 2024, the date "Ms. Kochka will secure mitigation employment."  *Compare* ECF No. 112 at 3 n. 1 *with* ECF No. 81-1 at 9.  Accordingly, Mr. Staller's opinion on the duration of loss, to the extent it relies on the "Worker Displacement: 2019-2021" survey and a period of three years is excluded.  To the extent Mr. Staller's opinion on the duration of loss is based solely on the Bureau of Labor statistics, Mr. Staller's economic damages calculation is likewise unreliable.  However, if Mr. Staller's duration of loss opinion is supported by the human capital model, a basis Ms. Kochka has not challenged, then Mr. Staller may testify as to his damages calculation at trial.

*Second*, the Court disagrees with Ms. Kochka that Mr. Staller's decision to not calculate any potential adverse tax calculations at this juncture renders his opinion on Ms. Kochka's damages confusing to the jury or prejudicial to Ms. Kochka.  It is the province of the district court, and not the jury, to award a prevailing employee an additional sum of money to compensate for the increased tax burden a back-pay award may create.  *See Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 442 (3d Cir. 2009).  Therefore, failing to provide the jury an adverse tax calculation where the jury will not be deliberating on that issue will not confuse the jury or prejudice Ms. Kochka.  The Court will deny this portion of Plaintiff's Motion.

*Third*, the Court disagrees with Ms. Kochka that Mr. Staller is unqualified and/or has an unreliable methodology for opining on the employment opportunities available to Ms. Kochka. Ms. Kochka appears to challenge Mr. Staller's qualifications by arguing that "Mr. Staller is not a vocational expert" and "has no training in the field of vocational rehabilitation, and he has never been qualified as an expert in that field."  *See* ECF. No. 81 at 6.  A review of Mr. Staller's curriculum vitae demonstrates that Mr. Staller is qualified to render his opinion.  *See* ECF No.

112-4. Likewise, Mr. Staller's methodology is reliable. Mr. Staller, utilizing employment listings from Forensic JobStats, delineated his methodology in his report. *See* ECF No. 81-1 at 6. He employed a date range of November 15, 2019 to April 23, 2023; he ran keyword searches for specific operations, *i.e.* "radiology," "imaging," "manager," "supervisor," "chief," "lead;" he selected Pittsburgh, PA as the applicable area; and he eliminated any postings that did not yield a keyword match. *Id.* Following his deposition, Mr. Staller further excluded postings from his dataset. *See* ECF No. 81-4. In reality, Ms. Kochka takes issue with the *results* of the methodology and Mr. Staller's analysis of the results, as opposed to the methodology itself. As WPAHS correctly contends, the arguments raised by Ms. Kochka will be properly explored on cross-examination and are not a basis to exclude Mr. Staller's opinions.

**Fourth**, the Court agrees with Ms. Kochka that Mr. Staller's opinion (Sections V, VIII) that relies on the standard for obtaining unemployment compensation under Pennsylvania Law to conclude that Ms. Kochka did not mitigate her damages would confuse the jury and should be excluded. The Pennsylvania Office of Unemployment Compensation evaluates whether applicants have met the qualifications under the Unemployment Compensation Law, 43 PS §§751-919.5 to receive compensation. In this action, Ms. Kochka is not seeking unemployment compensation. Thus, such requirements are not applicable to her in this dispute. WPAHS' attempt to downplay Mr. Staller's reliance on the Pennsylvania Office of Unemployment Compensation in opining on whether Ms. Kochka was reasonably diligent in her mitigation efforts is unavailing. *See* ECF No. 112 at 10 ("In truth, the Pennsylvania Unemployment Compensation minimum standards factored little into Mr. Staller's analysis. He merely pointed to them as a proxy benchmark…"). Mr. Staller explicitly stated that "[Ms. Kochka] has not met this standard outlined by the Pennsylvania Office of Unemployment Compensation." ECF No. 81-1 at 4. While Mr.

Staller states this is just a benchmark, his report makes clear that he is relying upon and applying that standard to Ms. Kochka to opine that she did not conduct a reasonable and diligent job search and therefore failed to mitigate her damages. Because this standard does not apply to Ms. Kochka, the following aspects of Mr. Staller's opinions are excluded: that (1) the job search requirements for the Pennsylvania Office of Unemployment Compensation is the standard that Ms. Kochka has to meet to conduct a reasonable and diligent job search and/or mitigate damages, and (2) that Ms. Kochka failed to exercise reasonable diligence because she failed to meet the job search requirements for the Pennsylvania Office of Unemployment Compensation. Mr. Staller may testify as to Ms. Kochka's job search efforts and the available employment opportunities.

### VI.    Plaintiff's Motion in Limine to Preclude Evidence or Argument that Plaintiff Failed to Mitigate Her Damages, ECF No. 82

Related to her *Daubert* motion, Ms. Kochka moves to exclude any evidence or argument that she failed to mitigate her damages. Ms. Kochka's primary argument is that Mr. Staller's opinion testimony is the only evidence WPAHS has to offer regarding mitigation of damages, and since that opinion testimony should be excluded, WPAHS will not have sufficient evidence to sustain its burden. ECF No. 83. Therefore, WPAHS should not be permitted to argue that Ms. Kochka failed to mitigate her damages. *Id.* In response, WPAHS identifies additional evidence that it will present with respect to mitigation, including evidence that supports an argument that Ms. Kochka withdrew from the employment market. ECF No. 112 at 12–15.

Under the ADEA, plaintiffs have a duty to mitigate damages. *Anastasio v. Schering Corp.*, 838 F.2d 701, 707 (3d Cir. 1988). However, the employer has the burden of proving a plaintiff's failure to mitigate. *Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir. 1995); *see also Caufield v. Ctr. Area Sch. Dist.*, 133 F. App'x 4, 10 (3d Cir. 2005). An employer can meet its burden by

showing that "substantially equivalent work was available," and the claimant "did not exercise reasonable diligence to obtain the employment." *Booker*, 64 F.3d at 864. An employer can also meet its burden by demonstrating that the employee "withdrew entirely from the employment market." *Caufield*, 133 F. App'x at *11 (citing *Tubari, Ltd., Inc. v. NLRB*, 959 F.2d 451, 454 (3d Cir. 1992)).

The Court will deny the Motion. Ms. Kochka has offered no compelling reasons why WPAHS should be precluded from introducing evidence regarding whether Ms. Kochka mitigated her damages. As addressed above, Mr. Staller will not be precluded from testifying at trial *see supra* at 8–12, and WPAHS has proffered additional evidence for the jury to consider. Further, the cases Ms. Kochka cites generally in her brief do not support her argument. *See, e.g.*, *Anastasio*, 838 F.2d at 707 (holding post-trial that two interrogatories regarding mitigation should not have been submitted to the jury; not precluding defendant-employer from offering mitigation evidence at trial). Therefore, Plaintiff's Motion will be denied.

### VII.   Plaintiff's Motion in Limine to Preclude Defendant's Discovery Designations, ECF No. 87

Ms. Kochka moves to preclude deposition testimony that has been designated by WPAHS. It appears that the designated deposition testimony relates to Andrea Campbell, who is listed as witness to be called on both Ms. Kochka's and WPAHS' witness lists. *See* ECF Nos. 67 at 3–4, 71 at 4. As Ms. Campbell will be providing live testimony, the Court grants the Motion without prejudice.

**VIII.     Defendant's Motion in Limine to Exclude Evidence and Testimony Relating to Julie Stuck and Drafts of Plaintiff's Termination Letter, ECF No. 89**

WPAHS moves to exclude evidence and testimony relating to Julie Stuck, a Labor Relations Consultant, and drafts of Ms. Kochka's termination letter. ECF No. 90. Ms. Stuck was asked to provide an objective view "from an HR perspective." WPAHS argues that such evidence has limited probative value because Ms. Stuck was not a decision-maker and the initial draft and final termination letter are consistent. WPAHS also argues that there is danger of unfair prejudice because Ms. Stuck stated "I trust your judgment, just trying to protect you on the backend from an EEOC claim" in one of the e-mails, which WPAHS argues could be prejudicial to the jury. *See* ECF No. 90 at 5, ECF No. 90-3 at 3. In response, Ms. Kochka argues that this Court has already decided, in denying WPAHS' motion for summary judgment, that evidence relating to Ms. Stuck and drafts of Ms. Kochka's termination letter is "relevant to whether WPAHS' stated reasons for terminating Ms. Kochka were pretextual." ECF No. 110 at 1–2. Ms. Kochka further argues that Ms. Stuck's role as a non-decisionmaker is irrelevant to the probative value and that WPAHS can argue at trial that the letters are consistent. Lastly, Ms. Kochka argues that the e-mails would not be prejudicial, but even if they were, the EEOC language can be easily redacted.

WPAHS' Motion will be granted in part and denied in part. WPAHS first challenges the probative value of the draft termination letters. In resolving WPAHS' motion for summary judgment, this Court determined that the draft termination letter and communications regarding the drafts are probative of pretext. ECF No. 49 at 13–17 ("These weaknesses in [WPAHS'] rationale for terminating Ms. Kochka, together with the evidence that most of the stated bases were omitted from the original draft of Ms. Kochka's termination decision and the doubt expressed over those that were included, are sufficient for a reasonable juror to find that [WPAHS'] explanation 'was false, and that [discrimination] was the real reason for the adverse employment action.'").

15

WPAHS' arguments do not alter the Court's opinion.  WPAHS' argument that "there is nothing inconsistent between the two drafts of Plaintiff's termination notice" belies its position that the earlier drafts and communications surrounding it should be excluded if they are the same.  ECF No. 90 at 4.  Further, the cases WPAHS cites are not analogous as they involve the deletion of reasons for termination that appeared in the draft termination letter but not in the final termination letter.  *See Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 609 (W.D. Pa. 2014) (Conti, J.) (finding it "unsurprising" that incident that appeared in the draft termination letter was removed from the final termination letter);  *Fernandez v. Woodhull Med. & Mental Health Ctr.*, Civ. A. No 14-cv-4191, 2017 WL 3432037 (E.D.N.Y. Aug. 8, 2017) (draft termination letter's reference to FMLA start date, which was provided for context in a timeline, that did not appear in final termination letter was not probative of discrimination).  Here, it is converse.  WPAHS *added* reasons to the final termination letter that did not appear in the draft, in response to Ms. Stuck's expressions of doubts regarding the bases of termination and the specter of a discrimination claim. Therefore, the probative value of the draft termination letters and communications is significant.

The Court also finds that the probative value of the EEOC reference by Ms. Stuck is not substantially outweighed by the danger of unfair prejudice to WPAHS.  WPAHS does not cite any cases in support of its argument to exclude this language and at trial WPAHS may elicit testimony regarding the reasoning for Ms. Stuck's statement.  In fact, WPAHS already intends to call Ms. Stuck to "testify in rebuttal to evidence and/or testimony regarding her communications with Alexandra Makin (Lieb) regarding Ms. Kochka's termination." ECF No. 71 at 4–5.  Accordingly, Ms. Stuck's statement does not need to be redacted based on unfair prejudice.

Lastly, WPAHS requested, that if its Motion is denied, WPAHS be permitted to amend the Joint Exhibit List to include Exhibit 2, 4, 5, 6 and 7 which were attached to its Motion in Limine.

WPAHS seeks to have all communications on this topic admitted and these exhibits were not previously on the parties' Joint Exhibit List.  Ms. Kochka does not object to inclusion of Exhibits 2, 5, 6 and 7, but does object to Exhibit 4, arguing that the text of the email is included on other emails and the 27 pages of attachments "have no independent relevance" and there is "no indication that Stuck reviewed or relied on the information contained in any of these attachments." ECF No. 110 at 1 n. 1.  The Court will grant the Motion insofar as it seeks to introduce Exhibits 2, 5, 6 and 7 which are not opposed by Ms. Kochka.  The Court defers ruling on Exhibit 4 which is opposed.

## IX.    CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED** that:

1.  Plaintiff's Motion in Limine #1 – To Limit the Testimony of Andrea Campbell and Morgan Henderson, ECF No. 74, is **DENIED**.

2.  Plaintiff's Motion in Limine #2 – To Preclude the Testimony of Michael Weber, ECF No. 76, is **GRANTED.**

3.  Plaintiff's Motion in Limine #3 – To Preclude Evidence or Argument Regarding Beverly Feragotti's Termination, ECF No. 78, is **GRANTED.**

4.  Plaintiff's *Daubert* Motion – To Preclude or Limit the Testimony of Chad Staller, ECF No. 80, is **GRANTED IN PART** and **DENIED IN PART**.  *First*, Mr. Staller may not testify as to (1) his opinion on the duration of loss, to the extent it relies on the "Worker Displacement: 2019-2021" survey. To the extent Mr. Staller's opinion on the duration of loss is based solely on the Bureau of Labor statistics, Mr. Staller's economic damages calculation is likewise unreliable and is excluded.  However, if Mr. Staller's duration of loss opinion is supported by the human capital model, a basis Ms. Kochka has not

17

challenged, then Mr. Staller may testify as to his damages calculation at trial. *Second*, Mr. Staller may not testify that (1) the job search requirements for the Pennsylvania Office of Unemployment Compensation is the standard that Ms. Kochka has to meet to conduct a reasonable and diligent job search and/or mitigate damages and (2) that Ms. Kochka failed to exercise reasonable diligence because she failed to meet the job search requirements for the Pennsylvania officer of Unemployment Compensation. Mr. Staller may testify as to Ms. Kochka's job search efforts and the available employment opportunities.

5. Plaintiff's Motion in Limine #4 – To Preclude Evidence or Argument that Plaintiff Failed to Mitigate Her Damages, ECF No. 82, is **DENIED**.

6. Plaintiffs' Motion in Limine #5 – To Preclude Defendant's Discovery Designations, ECF No. 87, is **GRANTED without prejudice.**

7. Defendant's Motion in Limine #1 – To Exclude Evidence and Testimony Relating to Julie Stuck and Drafts of Plaintiff's Termination Letter, ECF No. 89, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may introduce evidence and testimony relating to Ms. Stuck and drafts of Ms. Kochka's Termination Letter. Defendant may introduce Exhibits 2, 5, 6 and 7. The Court defers ruling on Exhibit 4.

DATED this 14th day of November, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record